# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**Eric D. Cook, individually and on behalf
of all others similarly situated,**

**Plaintiff,**

**v.**

**The Home Depot U.S.A., Inc.,**

**Defendant.**

**Case No. 2:06-cv-00571**
**JUDGE SMITH**
**Magistrate Judge Kemp**

## OPINION AND ORDER

Plaintiff brings claims on behalf of others similarly situated, seeking certification of a class action suit under Federal Rule of Civil Procedure ("FRCP") 23. Pursuant to FRCP 12(b)(6), the Defendant moves to dismiss for failure to state a claim upon which relief can be granted. This Court has jurisdiction to adjudicate this claim pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332. For the following reasons, the Court **GRANTS** Defendant's Motion to Dismiss (Doc. 31).

### I.    FACTS

#### A.    Background

In ruling on Defendant's motion to dismiss, the Court accepts as true the well-pleaded factual allegations set forth in the Complaint.

Plaintiff Eric D. Cook is a citizen of the State of Ohio. Defendant Home Depot U.S.A., Inc. (hereinafter "Home Depot" or "Defendant") is incorporated in Delaware with principal

operations in Atlanta, Georgia. Home Depot runs a chain of home improvement and hardware stores by the same name in Ohio and across the nation.

On June 28, 2004, Plaintiff entered into a contract with a Home Deport store in Franklin County, Ohio, to rent a paint sprayer, spray gun, and other related equipment. The itemized rental agreement that Plaintiff signed lists four amounts in the final totals. Agreement Subtotal: $266.45. Damage Waiver: $26.00. Sales Tax: $19.88. Estimated Total: $314.33. In addition to the Plaintiff's signature at the bottom of the agreement, the Plaintiff initialed a box directly next to these four totals, next to the clause "I have read and agree, as initialed to the right, to these special terms and conditions." Directly above this clause and the Plaintiff's initials, a box marked "Special Terms and Conditions" provides, *inter alia*, "2. I accept the benefits of the damage waiver (if applicable) described in paragraph 11 in the terms and conditions of this rental agreement." (Rental Agreement, Ex. 1).

Plaintiff asserts that Defendant never provided him, or the class he aspires to represent, with an opportunity to decline the optional Damage Waiver fee, nor did the Defendant explain the terms and conditions of the option. Only after he signed the agreement did Home Depot provide Plaintiff with the Terms and Conditions page, outlining the rental terms. Paragraph 11 describes the Damage Waiver as an optional form of insurance by which the customer pays ten percent of the rental value "to relieve [the renter] of liability for accidental damage to [the equipment], but not for any losses or damages due to theft, burglary, misuse or abuse, theft by conversion, intentional damage, disappearance or any loss due to [renter's] failure to care properly for such Equipment in a prudent manner . . . ." (Rental Agreement, Ex. 1, ¶ 11).

Plaintiff does not contest that he used Home Depot's equipment for seven days and returned it July 5, 2004, signing a rental invoice acknowledging return of the materials "in good

-2-

working order, and that the above total charges are correct." (Rental Invoice, Ex. 2). The invoice again listed the Damage Waiver in the itemized expense report. Because Plaintiff apparently did not use a can of paint thinner anticipated in the rental agreement, the final payment totaled $311.59. Plaintiff paid the amount in full.

### B.    Procedural History

Plaintiff filed a complaint July 7, 2006, in the Franklin County Court of Common Pleas, which Defendant promptly removed to this Court.

After the motion for leave to file an amended complaint was granted, Plaintiff's amended complaint advanced six claims. First, Plaintiff asserted Home Depot breached its rental agreement contract with him by automatically charging him for a useless damage waiver option without notice. Plaintiff claims this option was not bargained for in the agreement. Further, Plaintiff advanced three statutory claims under Ohio law, alleging that the consumer lease was "unconscionable" in violation of O.R.C. § 1310.06; requesting a declaratory judgment of parties' rights under O.R.C. § 2721.91 et seq.; and complaining of the Defendant's breach of the covenant of good faith and fair dealing found at O.R.C. § 1301.09. Additionally, Plaintiff brought two claims in equity, asserting Defendant's unjust enrichment and a claim of money had and received.

On October 23, 2006, Defendant moved to dismiss the amended complaint per FRCP 12(b)(6) for failure to state a claim upon which relief could be granted.

### II.    RULE 12(b)(6) STANDARD

A motion to dismiss for failure to state a claim should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief" or unless an issue of law is dispositive.  *See Conley v. Gibson*, 355 U.S. 41,

45-46 (1957).  All well-pleaded allegations must be taken as true and be construed most

favorably toward the nonmoving party.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A

12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it.

*Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983).  The merits of the

claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a

claim.  Consequently, a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if

there is no law to support the claims made, or if the facts alleged are insufficient to state a claim,

or if on the face of the complaint there is an insurmountable bar to relief.  *Rauch v. Day & Night*

*Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978).  Rule 12 (b)(6) must be read in conjunction with

Fed. R. Civ. P. 8(a) which provides that a pleading for relief shall contain "a short and plain

statement of the claim showing that the pleader is entitled to relief."  5A Charles Alan Wright &

Arthur R. Miller, *Federal Practice and Procedure* § 1356, at 296 (2d ed. 1990).  The moving

party is entitled to relief only when the complaint fails to meet this liberal standard.  *Id.*

On the other hand, more than bare assertions of legal conclusions are required to satisfy

the notice pleading standard.  *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th

Cir. 1988).  "In practice, a complaint must contain either direct or inferential allegations

respecting all the material elements to sustain a recovery under some viable legal theory."  *Id.* at

437.

> [W]e are not holding the pleader to an impossibly high standard; we recognize the
> policies behind Rule 8 and the concept of notice pleading.  A plaintiff will not be
> thrown out of court for failing to plead facts in support of every arcane element of
> his claim.  But when a complaint omits facts that, if they existed, would clearly
> dominate the case, it seems fair to assume that those facts do not exist.

*Id.*

-4-

### III.   DISCUSSION

Defendant Home Depot moves to dismiss each of Plaintiff's claims for lack of standing and failure to state a claim upon which relief can be granted. Each of Defendant's arguments will be discussed in turn. With the exception of the motion to dismiss for lack of standing, all motions to dismiss for failure to state a claim shall be granted.

### A.   Standing

Defendant Home Depot first moves to dismiss Plaintiff's complaint on the ground that Plaintiff lacks standing. Defendant specifically notes that because of the speculative nature of Plaintiff's claim—Plaintiff did not damage the tool and therefore did not need the damage insurance—he did not suffer an injury.

The standing requirement demands that Plaintiffs present "an injury in fact that is concrete and particularized," a causal link between the injury and the challenged conduct, and a likelihood of relief by favorable court decision. *Airline Prof'ls Ass'n v. Airborne, Inc.*, 332 F.3d 983, 987 (6th Cir. 2003).

Plaintiff alleges that he suffered a "concrete injury" ($26) caused by Defendant's deceptive force-selling of damage insurance with illusory benefits that would be redressed by a favorable court decision. *See* Pl. Response at 4-5. At this stage of procedure, with the allegations in the complaint presumed to be true, this Court denies Defendant's motion to dismiss for lack of standing. *Cf. Barnard v. Home Depot U.S.A., Inc.*, No. A-06-CA-491-LY, 2006 WL 3063430, at * 2 (W.D. Tex., Oct. 27, 2006) (denying motion to dismiss for lack of standing in the face of similar claims).

## B.    Breach of Contract

Home Depot contends that Plaintiff fails to state a valid breach of contract claim because Plaintiff did not present facts alleging a breach of the rental agreement. (Def.'s Mot. to Dismiss at 5-6). Additionally, Home Depot asserts that rescission of the contract is foreclosed because the contract "has been fully executed and performed." *Id.* at 7.

In Ohio, a breach of contract claim consists of the following: "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Doner v. Snapp*, 649 N.E.2d 42, 44 (Ohio Ct. App. 2d Dist. 1994). Both parties recognize the existence of a contract.

Although Plaintiff asserts "[d]efendant was obligated under the contracts to charge [p]laintiff and the class only for the charges they actually owed" but Defendant nevertheless "charged [p]laintiff $26.00 for something that it knew had no value" (Am. Compl. at 8), this does not amount to a breach of contract. Presuming all of the facts in the Amended Complaint to be true, Plaintiff fails to point to a specific contractual provision that Home Depot failed to perform.

The rental agreement that Plaintiff agreed to provided that the Plaintiff would have the use of the equipment for one week and be exempt from liability for certain types of damage to the equipment in exchange for rental and damage waiver fees (Rental Agreement, Ex. 1). Because Plaintiff returned the tool without damage and therefore did not need the damage insurance, he cannot claim that Home Depot denied him the coverage he purchased. Under the circumstances, the insurance purchased was unnecessary—not denied. *Cf. Barnard*, 2006 WL 3063430 at * 2 (dismissing "speculative" breach of contract claim under nearly identical circumstances). Such is the nature of insurance, but it does not constitute a breach of contract.

-6-

Hindsight may prompt parties to regret their bargain, but "[p]laintiffs' dissatisfaction with the terms . . . does not give rise to a breach of contract claim." *See Hanlin v. Ohio Builders & Remodelers, Inc.*, 196 F. Supp. 2d 572, 579 (S.D. Ohio 2001).

Since both parties have fully performed their duties under the contract, Home Depot correctly asserts "there is nothing left to be rescinded" (Def.'s Mot. to Dismiss at 7). Plaintiff took possession of the tool and paid for the rental and insurance charges without objection. Thus, Plaintiff received the benefits of the rental and the damage insurance.

Plaintiff's attempt to recast his complaint as fraud does not rescue this claim. *See Butler Cty. Bd. of Comm'rs. v. Hamilton*, 763 N.E.2d 618, 632 (Ohio Ct. App. 12th Dist. 2001) ("Like mistake, fraud must be pled with particularity and the waiver doctrine . . . appl[ies]."). Plaintiff's Amended Complaint does not claim fraud; therefore, the claim is waived. However, had Plaintiff properly pled a claim of fraud, rescission would still not be available because Plaintiff could not "return what was received." *Id.* at 633 ("[F]or a contract to be rescinded on the basis of fraud, the defrauded party must offer to return what was received.").

### C.    Breach of Implied Covenant of Good Faith and Fair Dealing

As a complementary and/or alternative claim to breach of contract, Plaintiff alleges that Home Depot breached the implied covenant of good faith and fair dealing found at § 1301.09 of the Ohio Code. Home Depot responds that this allegation fails to state a legitimate claim because the covenant of good faith and fair dealing lacks substantive guarantees absent a breach of contract (*See* Def.'s Mot. to Dismiss at 8; Def.'s Reply Br. at 7).

The duty of good faith and fair dealing does not authorize an independent cause of action. *See Physicians Weight Loss Ctrs. v. Creighton*, No. 90-CV-2066, 1992 U.S. Dist. LEXIS 12763, at *13 (N.D. Ohio, March 30, 1992); *Ebie v. Teledyne Indus.*, No. 87-3852, 1988 WL 98366, at

*4 (6th Cir., Sept. 21, 1988). It serves as a "salutary rule[] of construction" in evaluating contractual performance. *Bolling v. Clevepak Corp.*, 484 N.E.2d 1367, 1376 (Ohio Ct. App. 6th Dist. 1984). This understanding of the good faith requirement comports with the statutory language, which refers to "an obligation of good faith in . . . *performance* or *enforcement* [of contracts]." Ohio Rev. Code Ann. § 1301.09 (LexisNexis 2002) (emphasis added).

Having already determined that Plaintiff failed to state a claim for breach of contract compels dismissal of this claim as well. Plaintiff has not alleged that Home Depot failed to perform under the stated terms of the contract. Further, as mentioned above, Plaintiff cannot allege that Home Depot denied him the insurance coverage he purchased because he did not need the insurance after the fact. Home Depot enforced the contract per the terms Plaintiff expressly accepted; this is not bad faith. "Firms that have negotiated contracts are entitled to enforce them to the letter." *Ed Schory & Sons v. Francis*, 662 N.E.2d 1074, 1082 (Ohio 1996) (citation omitted); *Bennco Liquidating Co. v. Ameritrust Co. Nat'l Ass'n*, 621 N.E.2d 760, 762 (Ohio Ct. App. 8th Dist. 1993) ("In Ohio, a lender's decision to enforce its contract rights is not considered an act of bad faith.").

Plaintiff attempts to redirect this claim to Home Depot's deception of customers "at the time the contract was entered into" (Pl. Reply Br. at 8) (emphasis in original), but to no avail. Even had Plaintiff made this argument in the complaint, "[a] duty of good faith *originates* from a contractual relationship," so the duty "cannot exist until the underlying contract is formed." *Walker v. Dominion Homes, Inc.*, N.E.2d 570, 580 (Ohio Ct. App. 10th Dist. 2005) (*citing Ed Schory & Sons, Inc. v. Soc. Nat'l Bank*, 662 N.E.2d 1074 (Ohio 1996). Rather, it appears that Plaintiff really complains of fraudulent behavior, but Plaintiff failed to include a claim of fraud

-8-

in the Amended Complaint. Thus, Plaintiff fails to state a claim for breach of the duty of good faith and fair dealings with regards to Home Depot's performance under the contract.

### D. Uniform Commercial Code—Unconscionability

In response to Plaintiff's claim that the automatic inclusion of the damage insurance rendered the rental agreement an unconscionable consumer lease under § 1310.06 of the Ohio Code, Home Depot argues that the statute does not authorize an affirmative cause of action (Def.'s Mot. to Dismiss at 12).

Section 1310.06(a) provides: "If a court as a matter of law finds . . . any clause of a lease contract to have been unconscionable at the time it was made, the court may refuse to enforce the lease contract, may enforce the remainder of the lease contract without the unconscionable clause, or may so limit the application of the unconscionable clause as to avoid any unconscionable result." Ohio Rev. Code Ann. § 1310.06(a) (LexisNexis 2002). Although unconscionability can provide an affirmative defense to a contract claim, *Vincent Charity Hosp. v. Eget*, No. 52242, 1987 WL 8590, at *2 (Ohio Ct. App. 8th Dist. March 26, 1987) (citing *Williams v. Walker-Thomas Furniture*, 350 F.2d 445 (D.C. Cir. 1965)), and the statutory language suggests three remedies to a pending contractual obligation (rescind, enforce without the provision, or enforce with limitations on the provision), it does not provide a cause of action for a *completed* contract. In fact, in a case applying Ohio's Uniform Commercial Code provisions, the Eleventh Circuit found "[n]o case . . . in which a damage award was based on an unconscionable contract" *Cowin Equip. Co. v. General Motors Corp.*, 734 F.2d 1581, 1582 (11th Cir. 1984) (ruling that the unconscionability provision could not "be used as a basis for damages"); *see also Andersons, Inc. v. Consol, Inc.*, 185 F. Supp. 2d 833, 842 (N.D. Ohio 2001) (recognizing "plaintiff cannot use unconscionability as a separate cause of action").

Likewise, § 1310.06(b) is of no avail because plaintiff did not state a valid claim that Home Depot improperly induced him to accept the Rental Agreement. Rather, Plaintiff's actions point to the contrary.

Section 1310.06(b) provides: "[I]f a court as a matter of law finds that a lease contract or any clause of a lease contract has been induced by unconscionable conduct . . ., the court may grant appropriate relief." The statutory language of this provision "is limited to unconscionable inducement, and does not extend to the mere presence of an unconscionable clause within a lease that was fairly executed." *Barnard*, 2006 WL 3063430 at *4 (applying identical provision from the Texas UCC).

Under Ohio law, "the determination of whether a contract is unconscionable is a question of law for the court." *Fortune v. Castle Nursing Homes, Inc.*, 843 N.E.2d 1216, 1217 (Ohio Ct. App. 5th Dist. 2005) (citations omitted). To claim unconscionable inducement, Plaintiff must demonstrate procedural and substantive unconscionability. *Scovill v. WSYX/ABC*, 425 F.3d 1012, 1017-18 (6th Cir. 2005). The former refers to circumstances (e.g. coercive behavior on the part of one of the parties) disrupting fair bargaining conditions; the latter pertains to commercially unreasonable contract terms. *See id.* at 1017; *Fortune*, 843 N.E.2d at 1219. Based on the circumstances presented in the allegations, Plaintiff failed to establish either procedural or substantive unconscionability.

Presuming Plaintiff's allegations to be correct—that Home Depot did not inform him of the terms or the optional nature of the damage insurance until after he had accepted it—he did not allege that Home Depot refused to provide him with the rental terms and conditions. Moreover, he initialed a separate box authorizing that he "accept[ed] the benefits of the damage waiver (if applicable) described in paragraph 11 in the terms and conditions of this rental

agreement," and signed at the bottom, assenting "to the terms and conditions printed on this page and on the other page(s) of the agreement" (Rental Agreement, Ex. 1). He then assumed possession of the equipment for the rental period and returned the equipment on time, where he again recognized the correctness of the charges and paid for the rental in full without objection (Rental Invoice, Ex. 2). This second acknowledgement of his assent took place a week after he admitted to receiving the terms and conditions of the agreement and a week after his signatures vouched that he understood and accepted the terms as well as the Damage Waiver.

Thus, Plaintiff's apparent claim of fraudulent inducement (coerced purchasing of a "negative option") suffers from Plaintiff's own participation in the agreement. "A person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he intended, when he could have known the truth by merely looking when he signed." *ABM Farms, Inc. v. Woods*, 692 N.E.2d 574, 579 (Ohio 1998) (*quoting McAdams v. McAdams*, 88 N.E. 542, 544 (Ohio 1909)). Plaintiff had a duty to read the rental agreement that he initialed and signed and later confirmed with payment. *See Information Leasing Corp. v. GDR Investments*, 787 N.E.2d 652, 657 (Ohio Ct. App. 1st Dist. 2003) ("His claim of being an unwitting signatory, however, must be carefully balanced against the law in Ohio that places upon a person a duty to read any contract before signing it . . . .") (citation omitted). Negligence on the part of the renter does not qualify for procedural unconscionability.

Further, notwithstanding Plaintiff's conclusion that the insurance was worthless, the terms and conditions of the Damage Waiver suggest Plaintiff received reasonable insurance coverage. In exchange for 10 percent of the rental cost ($26 here), Home Depot assumed liability for "accidental damage" to the equipment that would likely prove far more costly. Rental

Agreement, Ex. 1, ¶ 11. This arrangement can hardly be described as commercially unreasonable.

Although Plaintiff never damaged the equipment and consequently did not need the insurance, he cannot claim substantive unconscionability on the bare assertion that the insurance he received was worthless. To rule otherwise would undermine the purpose of such insurance provisions.

### E.    Declaratory Judgment

Plaintiff's request for declaratory relief also fails. The prerequisites for declaratory relief entail: "(1) a real controversy between the parties; (2) the controversy is justiciable in character; and (3) speedy relief is necessary to preserve the rights of the parties." *Ohio Ass'n of Life Underwriters, Inc. v. Duryee*, 642 N.E.2d 1145, 1146 (Ohio Ct. App. 10th Dist. 1994) (citations omitted). These requirements ensure "that Ohio courts do not render advisory opinions." *R.A.S. Entm't, Inc. v. City of Cleveland*, 719 N.E.2d  641, 643-44 (Ohio Ct. App. 8th Dist. 1998). A request for declaratory judgment shall be dismissed where "(1) there is neither a justiciable issue nor an actual controversy between the parties requiring speedy relief to preserve rights which may otherwise be lost or impaired; or (2) in accordance with [O.R.C. 2721.07], the declaratory judgment will not terminate the uncertainty or controversy." *Id.* at 644 (citations omitted). Plaintiff's claim falls short on both counts.

A real controversy requires a dispute of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Burger Brewing Co. v. Liquor Control Comm'n*, 296 N.E.2d 261, 264 (Ohio 1973) (citation omitted). Plaintiff's Amended Complaint does not present such a current controversy; declaratory relief cannot resolve a conjectural controversy.

Plaintiff requests declaratory relief regarding "[his] rights under the Agreement with respect to the Damage Waiver Fee" (Am. Compl., ¶ 51). Yet that agreement concluded in 2004 when Plaintiff returned the equipment to Home Depot and paid for the rental (Rental Invoice, Ex. 2). Defendant correctly points out that Plaintiff fails to allege "continuing, adverse effects of Home Depot's sale of the Damage Waiver . . . two years ago" (Def.'s Mot. to Dismiss at 19). As such, speedy relief is not necessary—indeed, is moot—because Plaintiff no longer has rights under the rental agreement.

Plaintiff's further justification for a declaratory judgment—that consumers *may* continue to suffer from Home Depot's practice—reveals the hypothetical nature of the claim and the advisory nature of the relief he seeks. This Court cannot speculate as to future controversies to justify issuing a declarative judgment when the Amended Complaint lacks a sufficiently immediate *real* controversy.

### F.   Equitable Claims of Unjust Enrichment & Money Had and Received

Plaintiff's equitable claims of unjust enrichment and money had and received also fail to state a valid claim for relief. As Judge Kinneary noted in *Davis & Tatera, Inc. v. Gray-Syracuse, Inc.*, 796 F. Supp. 1078 (S.D. Ohio 1992), Ohio law does not allow parties to "seek damages under quasi-contractual theories of recovery" such as a claim of unjust enrichment when a contract governs the relationship. *Id.* at 1085. A contract existed in this case, and both parties performed under the contract, extinguishing their contractual duties.

As Defendant noted, Plaintiff's breach of contract and unjust enrichment claims essentially challenge the same conduct: Defendant's allegedly deceptive practice of selling the Plaintiff a worthless insurance option without notice. Plaintiff relies on *Randolph v. New England Mut. Life Ins. Co.*, 526 F.2d 1383 (6th Cir. 1975), for the proposition that an allegation

of bad faith would permit concurrent unjust enrichment and breach of contract claims. However, while the Sixth Circuit considered this contention as a possibility, *Randolph* upheld the district court's dismissal of the unjust enrichment claim because the breach of contract theory "[was] just as 'adequate' as the unjust enrichment" rationale.

The same could be said of this case, where the essence of the bad faith unjust enrichment claim pervades the breach of contract claim. (*Compare* Pl. Reply Br. at 7, claiming that "the breach was that Plaintiff was charged for a term for which he did not negotiate and which he did not affirmatively agree to pay, and which had only illusory value;" *with* Pl. Reply Br. at 11 claiming "Defendant deceived Plaintiff and class members into paying for coverage that was both illusory and sold through improper means").

Plaintiff's money had and received claim also suffers from this flaw, duplicating the *gravamen* of the contract claims (deceiving Plaintiff to purchase optional, worthless insurance). Plaintiff recognizes that the UCC governs this transaction, yet asserts that the UCC did not eliminate his common law equitable claims because the UCC provisions on lease contracts did not provide a similar remedy to the equitable claim under the circumstances. (Pl. Response at 12-13).

This logic defies the purpose of the Ohio UCC provisions "[t]o simplify, clarify, and modernize the law governing commercial transactions" and "make uniform the law among the various jurisdictions." Ohio Rev. Code Ann. § 1301.02(B) (LexisNexis 2002). "This purpose cannot be served if parties can avoid the requirements of the UCC by pleading common law causes of action along with their UCC claims for the same alleged transgressions." *Metz v. Unizan Bank*, 416 F. Supp. 2d 568, 581-82 (N.D. Ohio 2006) (dismissing plaintiff's claims for negligence, conversion, and money had and received as displaced by Ohio's UCC).

However, even if Ohio's version of the UCC did not formally displace equitable claims of money had and received pursuant to the reservation of supplemental common law authority found in Ohio Rev. Code Ann. § 1301.03 (LexisNexis 2002), Plaintiff's Amended Complaint merely avers the same elements as the contractual claims this Court has already dismissed. Both parties fulfilled their obligations under the contract; Home Depot "[was] entitled to enforce [the contract] to the letter." *See Ed Schory & Sons v. Francis*, 662 N.E.2d 1074, 1082 (Ohio 1996) (citation omitted).

Further, Plaintiff's voluntary payment of the rental and insurance charges—which he twice acknowledged to be correct after attesting to his understanding of the terms and conditions of the rental agreement and the Damage Waiver—diminishes his equitable claims. "The long-standing general rule in Ohio . . . is that a volunteer who makes payment, albeit mistakenly, on a legal obligation of another may not thereafter seek reimbursement from the benefitting party for his error." *Case Western Reserve Univ. v. Friedman*, 515 N.E.2d 1004, 1005 (Ohio Ct. App. 11th Dist. 1986). Although Plaintiff is correct that fraud or mistake of fact bars the application of the voluntary payment rule, *see Nationwide Life Ins. Co. v. Myers*, 425 N.E.2d 952, 956 (Ohio Ct. App. 9th Dist. 1980), Plaintiff failed to bring a claim of fraud, and, even construing the facts in the light most favorable to the non-moving party, Plaintiff's own conduct belies the claim of mistake of fact, especially in light of Ohio's recognition that signatories to a contract generally bear a duty to read the contract provisions they accept.

### IV.  DISPOSITION

Based on the reasons above, the Court **GRANTS** Defendant's Motion to Dismiss for failure to state a claim. Plaintiff's Amended Complaint shall be dismissed with prejudice.

Based on the aforementioned ruling, Plaintiff's Motion for Leave to File a Second Amended Complaint and to Amend the Preliminary Pretrial Order (Doc. 55) is denied as moot. The Court has reviewed the proposed Second Amended Complaint attached to Plaintiff's Motion and the new and/or different information contained in the Second Amended Complaint does not add anything to the substance of the analysis.  Specifically, Plaintiff's newly amended Count II of the Second Amended Complaint is substantively similar to claims addressed in the prior Amended Complaint and therefore addressed by the Motion to Dismiss.  *See*, supra Section III, D.  In addition, the Court can deny leave to amend if it would be futile to permit the filing due to the complaint's failure to state a claim upon which relief can be granted.  *Robinson v. Michigan Consolidated Gas Co.*, 918 F.2d 579 (6th Cir.1990).

The Clerk shall remove Document 31 and Document 55 from the Court's pending motions list. The Clerk shall remove this case from the Court's pending cases.

**IT IS SO ORDERED.**

_____*/s/ George C. Smith*_____
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**